**Slip Op. 02-12**

## UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

| | |
|---|---|
| ———————————————————— **x** | |
| FRONTIER INSURANCE COMPANY (Surety for **:** Imagereader, Inc., dba Info Peripherals, Inc.) | |
| **:** | |
| Plaintiff, | Court No. 00-09-00470 |
| v. **:** | |
| **:** | |
| THE UNITED STATES OF AMERICA, **:** | |
| **:** | |
| Defendant **:** | |
| ———————————————————— **x** | |

[Plaintiff's Motion for Summary Judgment denied.  Defendant's Motion for Summary Judgment granted]

Decided: February 4, 2002

*Law Offices of John M. Daley and Glad & Ferguson P.C., (John M. Daley),* for Plaintiff.

*Robert D. McCallum, Jr.,* Assistant Attorney General, United States Department of Justice; *John J. Mahon*, Acting Attorney in Charge, International Trade Field Office United States Department of Justice, *(Amy Rubin)*; *Beth C. Brotman,* Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, of Counsel, for Defendant.

## OPINION

**BARZILAY, JUDGE:**

### I. INTRODUCTION

This case is before the court on cross-motions for summary judgment.  Plaintiff ("Frontier") was the surety for the importer.  Pursuant to 19 U.S.C. § 1304 (1998), Defendant ("Customs") required that Frontier pay a 10% marking duty for the alleged failure of its client to properly mark the country of origin on the retail packages of imported computer scanners.

Frontier commenced this action for a refund of the marking duties claiming that the imported merchandise at issue was properly re-marked prior to liquidation. Frontier asserts that Customs (1) cannot prove the merchandise was not properly re-marked, (2) is not authorized to assess marking duties on its theory that the importer failed to obtain a release from Customs verifying that the merchandise was properly re-marked, (3) cannot recover marking duties because the importer failed to hold the merchandise pending receipt of a release from Customs, and (4) should have issued a Notice to Redeliver which would have caused Customs to verify the accuracy of the re-marking of the merchandise. Customs argues that it never received the required certification from the importer that the merchandise was properly re-marked and that the importer failed to comply with the relevant statutory and regulatory requirements including the Notice to Mark. Therefore, Customs alleges it properly assessed a 10% marking duty on the imported merchandise. This court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (1994).

## II. BACKGROUND

At issue before this court is an entry of imported computer scanners from China. The computer scanners were imported by Imagereader, Inc., dba Info Peripherals, Inc. ("importer") on July 28, 1998, at the Port of San Francisco under entry number K80-0848683-0. The following facts are not disputed. Frontier acted as surety for the importer and bonded the imported entry at issue. The retail packages of the scanners were not properly marked to identify the country of origin. On July 30, 1998, Customs sent the importer a Notice to Mark (Customs Form 4647) which stated: "[r]etail packaging must be marked with the country of origin. Whenever a U.S.

address is shown the country of origin must be in close proximity in letters of at least equal size."
*See Def.'s Cross-Mot. for Summ. J.* ("*Def.'s Br.*") at 1.

According to Jeff Ghielmetti, Vice President of Operations for the importer, the marking problems were corrected. *Aff. of Jeff Ghielmetti* ("*Ghielmetti Aff.*") at ¶ 3. In his affidavit, Mr. Ghielmetti declares that he personally signed the "Importer Certification" portion of the Notice to Mark and mailed the original certification to his broker and a copy to Customs in San Francisco. *Ghielmetti Aff.* at ¶ 6. However, the Customs commodity team in San Francisco denies having received the certification from the importer. *Declaration of Brian Carter* at ¶ 6. Thus, on June 15, 1999, Customs sent a Notice of Action (Custom Form 29) notifying the importer and its broker that Customs proposed to liquidate the entry with a 10% marking duty for failure to mark unless Customs received a response from the importer within 20 days. Since neither the importer nor the broker responded to the Notice of Action, Customs reliquidated the entry on July 23, 1999, with a 10% marking duty.[1] Sometime after it responded to the Notice to Mark and before the Notice of Action issued, the importer went out of business. Therefore, Customs demanded that Frontier pay for the marking duties owed on the imported scanners. Frontier filed a timely protest which was denied because the importer failed to (1) provide a signed release from Customs that the re-marking was approved and (2) hold the merchandise until receiving a written release from Customs. *Def.'s Br.* at 3. Following the protest denial, on August 14, 2000, Frontier paid the marking duties in accordance with Customs' payment demand and filed this action seeking a refund of $41,386.30, plus interest from Customs.

---

[1] As explained in Customs' brief "the entry had been mistakenly liquidated 'no change' by Customs on June 11, 1999."

### III. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." USCIT R. 56(c). Moreover, summary judgment is a favored procedural device "'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987). Whether a disputed fact is material is identified by the substantive law and whether the finding of that fact might affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Civil actions contesting the denial of a protest. . ." shall be tried *de novo*. 28 U.S.C. § 2640(1)(a) (1994).

### IV. DISCUSSION

The requirements for the proper marking of merchandise imported into the United States are specified at 19 U.S.C. § 1304 which states in pertinent part:

> (a) Marking of articles
>
> Except as hereinafter provided, every article of foreign origin (or its container, as provided in subsection (b) hereof) imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such a manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article.
>
> . . . .

(h) Additional duties for failure to mark

If at the time of importation any article (or container, as provided in subsection (b) of this section) is not marked in accordance with the requirements of this section, and if such article is not exported or destroyed or the article (or its container. . .) marked after importation in accordance with the requirements of this section (such exportation, destruction, or marking to be accomplished under customs supervision prior to the liquidation of the entry covering the article, and to be allowed whether or not the article has remained in continuous customs custody), there shall be levied, collected, and paid upon such article a duty of 10 per centum ad valorem, which shall be deemed to have accrued at the time of importation, shall not be construed to be penal, and shall not be remitted wholly or in part nor shall payment thereof be avoidable for any cause.

The Customs regulations found in 19 C.F.R. § 134 (1998) detail further requirements and

necessary action that an importer must undertake to properly mark the imported merchandise

after entry to avoid the assessment of a 10% marking duty.

Articles not marked as required by this part shall be subject to additional duties of 10 percent of the final appraised value unless exported or destroyed under Customs supervision prior to the liquidation of the entry. . . .

19 C.F.R. § 134.2.

(a) *Notice to mark or redeliver*. When articles or containers are found upon examination not to be legally marked, the port director shall notify the importer on Customs Form 4647 to arrange with the port director's office to properly mark the article or containers, or to return all released articles to Customs custody for marking, exporting, or destruction.

. . . .

(c) *Supervision*. Verification of marking, exportation, or destruction of articles found not to be legally marked shall be at the expense of the importer and shall be performed under Customs supervision unless the port director accepts a certification of marking as provided for in § 134.52 in lieu of marking under Customs supervision.

19 C.F.R. 134.51(a), (c).  To comply with the "supervision" requirement of 19 C.F.R. §

134.51(c) by a certificate of marking, the importer is obligated to act in accordance with the

requirements of 19 C.F.R. § 134.52.

> (a) *Applicability*. Port directors may accept certificates of marking supported by samples of articles required to be marked, for which Customs Form 4647 was issued, from importers or from actual owners complying with the provision of § 141.20 of this chapter, to certify that marking of the country of origin on imported articles as required by this part has been accomplished.

> (b) *Filing of certificates of marking*. The certificates of marking shall be filed in duplicate with the port director, and a sample of the marked merchandise shall accompany the certificate. The port director may waive the production of the marked sample when he is satisfied that the submission of such sample is impracticable.

> (c) *Notice of acceptance*. The port director shall notify the importer or actual owner when the certificate of marking is accepted. Such notice of acceptance may be granted on the duplicate copy of the certificate of marking by use of a stamped notation of acceptance. The port director is authorized to spot check the marking of articles on which a certificate has been filed. If a spot check is performed, the approved copy of the certificate, if approval is granted, shall be returned to the importer or actual owner after the spot check is completed.

19 C.F.R. § 134.52 (a)-(c).

Frontier argues that Customs has failed to produce any evidence that shows that the retail

packages of the scanners were not properly marked in compliance with the Notice to Mark.

Frontier claims that the Affidavit of Mr. Ghielmetti supports a finding that the importer properly

marked the packages and mailed the signed certification to Customs.  *Ghielmetti Aff.* at ¶¶ 3-6.

Similarly, notwithstanding Customs' claim that it never received the certification, Frontier argues

that Customs lacks the authority to assess marking duties based upon the failure to provide a

signed release or upon the alleged failure of the importer to hold the merchandise prior to

receiving a release from Customs. Frontier asserts that

> under existing law, Customs' sole remedy for the importer's alleged violation of its duty to 'hold' the merchandise in response to the Notice to Mark would have been to issue a Notice to Redeliver the merchandise for the purpose of permitting Customs to verify the accuracy of the certification of re-marking, and to assess liquidated damages if it failed to do so.

*Mem. of Points and Authorities in Supp. Pl.'s Mot. for Summ. J.* ("*Pl.'s Br.*") at 1. Additionally,

Frontier claims that Customs cannot prove that the importer failed to hold the merchandise

because Customs allowed 10 months to pass before acting on the Notice to Mark. The alleged

"delay" resulted in Customs' inability to locate the importer after its business ceased.

> The sole basis for the Customs' claim that the importer "failed to hold the merchandise" pending receipt of the release is the fact that "when the import specialist called the involved Customs broker about why there was no response to the marking notice [in June of 1999], he was advised that the importer was out of business;" in other words the evidence only shows that Customs could not *contact* the importer, *not* that the importer did not "hold" the merchandise.

*Pl.'s Br.* at 16.

Customs claims that Frontier failed to comply with the specific statutory and regulatory

requirements of the Notice to Mark. Customs asserts

> Frontier's entire case rests on its assertion that the merchandise had been physically re-marked in accordance with this section of the Notice to Mark. While Frontier is correct that Customs could have assessed only liquidated damages and not marking duties if the goods had been properly marked prior to liquidation but beyond the 30 day period contained in the Notice to Mark, whether marking is "proper" cannot be determined by the importer or its surety; "proper" marking includes compliance with all statutory requirements.

*Def.'s Br.* at 12 (footnote omitted). Specifically, Customs claims Frontier failed to (1) comply

with the requirements of section 15 of the Notice to Mark, (2) re-mark the scanners "under the

supervision of Customs" as required by the regulations of 19 C.F.R. § 134, and (3) retain the

merchandise until corrective action was accepted by Customs.  Customs alleges that because of these failures a 10% marking duty was properly assessed on the reliquidated merchandise.

The parties do not dispute that the merchandise was not properly marked at the time of importation.  Therefore, the court must determine if the importer complied with the statutory and regulatory requirements for re-marking the merchandise.  As Customs correctly concludes, § 1304 mandates the assessment of a 10% marking duty when (1) at the time of importation an article is not marked in accordance with the provisions of § 1304(a) and (2) the merchandise is not exported, destroyed or re-marked under the supervision of Customs prior to the liquidation of the entry.  Furthermore, there are specific regulatory requirements the importer must comply with before the merchandise can be released into the commerce of the United States.  The importer must (1) ensure that the merchandise is properly re-marked in accordance with 19 U.S.C. § 1304, (2) re-mark the merchandise under the supervision of Customs "unless the port director accepts a certificate of marking as provided for in § 134.52 in lieu of marking under Customs supervision" and (3) wait for the re-marking to be reviewed or receive notification that the certificate of marking has been accepted by the port director.  19 C.F.R. § 134.51(c).  Until these requirements are satisfied, it is the responsibility of the importer to physically retain the merchandise.  This is specifically stated in section 14 of the Notice to Mark "WARNING: all merchandise must be retained until you are notified by Customs that corrective action is acceptable."  Additionally, the Customs Form 4647 Information and Instructions document instructs the recipient of the Notice to Mark to "[r]etain control of all merchandise described on Customs Form 4647 [Notice to Mark].  The merchandise must be held intact; it cannot be moved or distributed until authorized by the Customs Service."

In this instance it is clear that the importer failed to comply with the statutory and regulatory requirements. Frontier claims that Customs can neither prove that the merchandise was not properly re-marked nor that importer did not retain the merchandise. The court does not agree. Clearly, once the merchandise is determined to be improperly marked, it is the importer's responsibility to re-mark in accordance with the statutory and regulatory requirements. As in this case, if Customs is willing to accept a certification of marking, the regulations clearly require that the importer file the certificate of marking and retain the merchandise until Customs notifies the importer that the re-marking is in compliance with the statutory requirements. *See* 19 C.F.R. § 134.51(a), (c); 19 C.F.R. § 134.52 (a)-(c). Customs must be able to verify the proper marking. "The port director is authorized to spot check the marking of the articles on which a certificate has been filed. If a spot check is performed, the approved copy of the certificate, if approval is granted, shall be returned to the importer or actual owner after the spot check is completed." 19 C.F.R. § 134.52(c). This is why the Notice to Mark clearly and specifically warns the importer to retain the merchandise until Customs authorizes that the re-marking is proper. Frontier's position would allow the importer to "self-regulate" because the *importer* would then determine if the merchandise was properly re-marked. This clearly contradicts the meaning and purpose of 19 U.S.C. § 1304 by removing the final authority for country of origin marking compliance from the agency charged with that responsibility.

Although there is a disputed issue of fact regarding whether Frontier did send the certification to Customs, it is undisputed that the importer failed to obtain authorization from Customs to release the merchandise into the commerce of the United States. Frontier's claims that (1) the importer sent the certification and (2) Customs failed to act on the Notice to Mark for

10 months, does not allow it to avoid its obligation under the import bond that its client would hold the merchandise and receive approval from Customs prior to releasing the scanners for delivery to its customers. The burden was on the importer to ensure that it undertook the clearly communicated, mandated corrective action to properly re-mark the retail packages of the scanners. Similarly, if the importer was concerned with undue delay during this process, it should have initiated contact with Customs. It could not unilaterally determine, contrary to the clear terms of the Notice to Mark, that it did not need notification from Customs that its certificate of marking was accepted.

Finally, the court finds unpersuasive Frontier's claim that Customs' sole remedy was to issue a Notice to Redeliver and assess liquidated damages if the importer failed to "hold" the merchandise and allow Customs to verify the certification. In accordance with 19 C.F.R. § 134.51, the Notice to Mark tells the importer that it must either properly mark the merchandise on the importer's premises or return to Customs' custody for marking, exportation or destruction. If the importer does not take one of these actions within 30 days, or within such additional time as the Port Director may allow, liquidated damages may be assessed in an amount equal to the entered value of the merchandise. *See* 19 C.F.R. § 134.54. Although Frontier is correct that if the merchandise had not been properly re-marked beyond the 30 day period contained in the Notice to Mark then liquidated damages could have been assessed, it is not a requirement that Customs send an additional Notice to Redeliver in order to assess the 10% marking duty.

Frontier's argument that Customs' sole remedy was to send a subsequent Notice to Redeliver and possibly assess liquidated damages for non-compliance incorrectly interprets the regulatory scheme. As discussed above, an importer is subject to marking duties if it fails to

properly re-mark the merchandise under the supervision of Customs. *See* 19 C.F.R. §134.51(c).

Similarly, Frontier's assertion that Customs cannot prove that Frontier did not "hold" the

merchandise does not change the fact that the importer cannot show the required notification

from Customs that it accepted the importer's certification. The court finds that the importer

failed to comply with the statutory and regulatory requirements for proper re-marking of the

scanners and that Customs properly assessed a 10% marking duty. Therefore, as surety Frontier

must pay that duty.

## V. CONCLUSION

For the foregoing reasons, the court holds that Customs properly assessed a 10% marking

duty on entry number K80-0848683-0. Judgment will be entered accordingly.

Dated:_____                     _____
     New York, NY                                 Judith M. Barzilay
                                        Judge