**ST. PAUL FIRE & MARINE INSURANCE CO. (Surety for Carreon, Inc.), Plaintiff–Appellee,**

v.

**The UNITED STATES, Defendant–Appellant.**

No. 93–1029.

United States Court of Appeals, Federal Circuit.

Oct. 1, 1993.

Rehearing Denied Nov. 30, 1993.

T. Randolph Ferguson, Glad & Ferguson, San Francisco, CA, argued for plaintiff-appellee. With him on the brief was John M. Daley, Law Office of John M. Daley, of San Francisco, CA, of counsel.

Barbara M. Epstein, Attorney, Commercial Litigation Branch, Dept. of Justice, New York City, argued for defendant-appellant. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Attorney in Charge, Intern. Trade Field Office. Also on the brief was Edward N. Maurer, Office of Asst. Chief Counsel, U.S. Customs Service, of counsel.

Before ARCHER, CLEVENGER and SCHALL, Circuit Judges.

CLEVENGER, Circuit Judge.

The United States, on behalf of its Customs Service (Customs), appeals from the summary judgment of the United States Court of International Trade in favor of St. Paul Fire & Marine Insurance Co. *St. Paul Fire & Marine Ins. Co. v. United States*, 799 F.Supp. 120 (Ct.Int'l Trade 1992). The judgment appealed holds that 41 entries of merchandise with respect to which St. Paul stands as surety must be liquidated duty-free as entered by operation of law under 19 U.S.C. § 1504(a) (1988). In so holding, the Court of International Trade decided that Customs unlawfully extended the time period for liquidation of the entries in question.

Because the court erred in so holding, we reverse and remand.

I

Carreon Management Services, Inc. made 41 entries of merchandise at El Paso, Texas between July 14, 1981 and August 24, 1982. Carreon asserted duty-free treatment for the merchandise under Item 807.00 of the Tariff Schedules of the United States, which accords duty-free treatment to articles assembled abroad from components produced in the United States. In order to obtain such duty-free treatment, however, the importer must supply Customs with detailed documentation including, *inter alia*, invoices, certificates of origin, foreign assemblers' declarations and actual cost data.

Section 1504(a) of Title 19 provides that if an entry of merchandise is not liquidated by Customs within one year from the date of entry, the entry will be "deemed liquidated" at the rate of duty, value, quantity and amount of duties asserted by the importer at the time of entry. 19 U.S.C. § 1504(a). Subsection (b) of section 1504, however, provides that the one-year period for liquidation may be extended, among other reasons, if Customs needs additional information for the proper appraisement or classification of the merchandise, provided that Customs gives "notice of such extension to the importer, his consignee or agent in such form and manner as [Customs] shall prescribe in regulations." 19 U.S.C. § 1504(b) (1982), *amended by* 19 U.S.C. § 1504(b) (Supp. IV 1986). Subsection (d) of section 1504 expressly limits Customs' subsection (b) authority to extend the one-year period for liquidation set forth in subsection (a), by stating that any entry not liquidated within four years from entry shall be "deemed liquidated" as specified above. The only exception to this absolute four-year time period relates to further extensions of liquidation times that are compelled either by statute or court order, neither of which are present in this case. 19 U.S.C. § 1504(d) (1988).

II

As to each of the 41 entries at issue, Carreon asserted duty-free treatment under

Item 807.00 and supplied Customs at entry certain of the information required to support the treatment asserted, including estimated costs, invoices and foreign assemblers' certificates. Carreon did not submit the required actual cost data and country of origin certificates, and without them Customs could not accept Carreon's duty-free assertions. Rather than liquidate the entries on some other basis, Customs withheld liquidation and released the merchandise to Carreon, who with its surety St. Paul, executed a bond promising that they would be jointly and severally liable for any additional duties subsequently found due upon liquidation.

Customs extended the time for liquidation of the 41 entries two or three times because "information [was] needed for the proper appraisement or classification of the merchandise [which was] not available to the appropriate customs officer." 19 U.S.C. § 1504(b)(1) (1988). No individual extension exceeded one year and the total time of extensions for each of the entries did not exceed four years from the date of each entry. Although Customs did not retain copies of the extension notices, Customs produced a computer printout with codes at trial indicating the issuance of and the reasons for the extensions. For seven of the entries, the printout fails to show an extension of the first anniversary of the dates of entry, but notes extensions for such entries on their second and third anniversaries. For three other entries the printout shows extensions on the first and where applicable the third anniversaries, but no extension on the second anniversary. Customs has no written record or oral evidence to prove that discussions occurred between Customs officials and Carreon personnel concerning the reasons why Carreon failed to produce the required information. Customs did present evidence, however, establishing that it is customary for Customs officials to have verbal communications with importers about the submission of

cost data although such communications might not be reflected in the written records.

On April 4 and October 10, 1984, Customs issued to Carreon formal requests for information on Customs Form 28 seeking the required missing documentary information. Carreon did not respond to those requests and Customs, on January 4, 1985, liquidated the 41 entries. In so doing, Customs denied Carreon's request for duty-free treatment and instead assessed additional duties of $273,944.44 based on the full invoice value of the merchandise. On March 3, 1985, Customs issued a demand for payment of the additional duties to St. Paul. At that time, the surety discovered that Carreon had discontinued its business and would not pay the duties.[1] On May 8, 1985, St. Paul protested the validity of the liquidations. When Customs denied the protest, St. Paul paid the duties and brought suit demanding refund of the duties paid.

### III

The Court of International Trade held a trial *de novo* regarding the contested protest denial and rendered a decision on the basis of the record created before it. 28 U.S.C. § 2640(a)(1) (1988); H.R.Rep. No. 1235, 96th Cong., 2d Sess. 59 (1980) (House Report pertaining to Customs Courts Act of 1980, Pub.L. No. 96–417, 94 Stat. 1727), *reprinted in* 1980 U.S.C.C.A.N. 3729, 3770 (trial *de novo* of Customs protest decisions); S.Rep. No. 466, 96th Cong., 1st Sess. 19 (1979) (same). St. Paul argued on its summary judgment motion that the second and third extensions were unlawful because Customs lacked authority to extend the liquidation period after the first one-year extension period expired. Consequently, because no entry was liquidated within one year from the expiration of the first one-year extension time, all the entries necessarily had to be "deemed

---

1. Pursuant to 19 C.F.R. § 159.12(b) (1992), St. Paul received a copy of each notice of extension issued to Carreon. St. Paul did not, however, monitor the entries by inquiring of its principal about the status of the entries or the likelihood of success of Carreon's assertion for duty-free treatment for the entries. Once on notice of the extensions, St. Paul was in a position to protect

itself from the monetary risks of its suretyship contract. *See St. Paul Fire & Marine Ins. Co. v. Commodity Credit Corp.,* 646 F.2d 1064, 1072–73 (5th Cir.1981) ("The law does not favor the indifferent, unseeing surety who fails to help himself." (citing *Magee v. Manhattan Life Ins. Co.,* 92 U.S. 93, 98, 23 L.Ed. 699 (1875))).

liquidated" duty-free as entered under section 1504(a). St. Paul also asserted that the total length of time taken to liquidate the entries, ranging from eleven to twenty-nine months, was so unreasonable under the circumstances that it invalidated the liquidations. The United States, on cross-motion for summary judgment, argued that since the total time for all extensions for each of the entries did not exceed the four-year statutory time limit, and since Customs, while awaiting receipt of information required to support an asserted appraisement or classification, has the discretion to determine whether to issue a particular extension of up to one year, the various extensions issued are lawful. For these reasons, Customs contended that it correctly denied Carreon's request for duty-free treatment and properly liquidated the entries on January 4, 1985. In addition, the parties disputed whether proper notices of extensions had been issued by Customs with regard to the ten entries which lack documentary evidence of sequential anniversary date extensions. Absent proper notice, an extension lacks authority under section 1504(b) and the applicable regulations.

## IV

The Court of International Trade framed the questions before it on the cross-motions for summary judgment as whether it was reasonable for Customs to have issued the extensions of liquidation. The court noted that although it

> should ordinarily "defer to Customs' determination that it needs additional information to liquidate an entry and therefore requires an extension of the statutory period," ... [t]he extension period granted must be "for a **reasonable period of time relative to the situation,**" and it cannot be "**so great as to constitute an abuse of discretion.**"

*St. Paul Fire & Marine,* 799 F.Supp. at 124 (quoting *Detroit Zoological Soc'y v. United States,* 630 F.Supp. 1350, 1357 (Ct.Int'l Trade 1986)) (emphasis in original). The court reasoned therefore that the number of one-year extensions granted by Customs, i.e., the total

extension period, also must be reasonable in light of the circumstances. *Id.*

Because Customs' first one-year extensions of liquidation were each made to enable Carreon to supply required information to support its asserted claim to duty-free treatment, the court held each of the first one-year extensions reasonable. That holding is unchallenged in this appeal. The reasonableness of the remaining extensions, according to the court, must be assessed "in the light of the circumstances." *Id.* Those circumstances particularly included the regulations pursuant to which Customs sought the additional required information from Carreon.

The court determined that "under the circumstances presented," Carreon and Customs "agreed" that the requisite cost data would be forthcoming at the six-month intervals provided in the regulations. When Carreon failed to submit the cost information within the intervals specified in the regulations, the court decided that Customs had "no cause to believe that Carreon would submit the required cost data." *Id.* at 126. Thus, Customs no longer could contend that it had insufficient information to classify the merchandise properly. Consequently, the court held the extensions granted after Carreon's breach of its six-month submission agreement to be unreasonable, and an abuse of discretion, because Customs failed to demonstrate the reasonableness of the second and third extensions. Since none of the entries was liquidated within one year of entry, all were "deemed liquidated" duty-free as Carreon asserted at entry.[2] St. Paul's victory was thus achieved because Customs was found unable to demonstrate the reasonableness of the second or third extensions.

## V

On appeal, the United States contends that Customs has the discretion to collect the duties in the manner it deems appropriate, citing 19 U.S.C. § 3 (1988), which provides that "[t]he Secretary of the Treasury shall direct the superintendence of the collection of the duties on imports as he shall judge

---

2. The court did not reach St. Paul's contention that the ten entries lacking documentary evidence of sequential extensions must be liquidated as entered.

best." Further, the United States points us to our apt precedent, *National Corn Growers Ass'n v. Baker,* 840 F.2d 1547, 1554 (Fed.Cir. 1988), which expressly recognizes that 19 U.S.C. § 3 "obviously" provides Customs with discretionary authority to determine for each particular entry the appropriate procedures for proper assessment and collection of duties. The government, noting authority, argues that the law presumes that Customs officials properly perform their duties. Also, the official acts of Customs personnel in this case are presumed correct and the burden of proving otherwise rests upon Carreon. 28 U.S.C. § 2639(a)(1) (1988). Finally, the United States argues that Customs' discretion to grant one-year extensions of time for liquidation is only limited by the four-year time bar established in section 1504(d) and by the notice and reason requirements of section 1504(b).

St. Paul relies upon the court's reasoning to argue that the second and third extensions were unlawful. With admirable candor, St. Paul demonstrates that all of the first extensions for each of the 41 entries were made after Carreon had defaulted on its obligation under 19 C.F.R. § 10.21 (1993) to provide updated cost data. Further, many of the first extensions were made after Carreon defaulted on its similar obligation to provide actual cost data. These obligations of Carreon under the regulations formed the predicate for the court's finding that Carreon and Customs "agreed" to a process by which Carreon would timely submit the required cost data. St. Paul thus acknowledges that the reasoning employed by the court to invalidate the second and third extensions seems equally applicable to the first extensions. St. Paul, however, explains the apparent flaw in the court's reasoning by stating the court's failure to invalidate the first extension demonstrates its recognition that Customs has a measure of discretion, notwithstanding agreements arising from failure to satisfy regulations, with which to authorize section 1504(b) extensions.

## VI

We review the summary judgment in this case "for correctness as a matter of law,

deciding *de novo* the proper interpretation of the governing statute and regulations as well as whether genuine issues of material fact exist." *Guess? Inc. v. United States,* 944 F.2d 855, 857 (Fed.Cir.1991). The question before us is whether the Court of International Trade erred in determining that the second and third extensions of liquidation granted by Customs on the 41 entries were unlawful.

■ In order to answer this question, section 1504 must be seen in its proper perspective. Before the enactment of section 1504, no provision limited the amount of time that Customs could expend before liquidating an entry. Thus, before 1978, "Customs could delay liquidation as long as it pleased, with or without giving notice." *International Cargo & Surety Ins. Co. v. United States,* 779 F.Supp. 174, 177 (Ct.Int'l Trade 1991). Section 1504 consequently serves to "increase certainty in the customs process for importers, surety companies, and other third parties with a potential liability relating to a customs transaction." S.Rep. No. 778, 95th Cong., 2d Sess. 32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2211, 2243.

Such certainty is provided by the statutory rules that govern the times and reasons Customs may employ to extend the one-year period available for liquidation under section 1504(a). The time period may be extended up to four years from the date specified in subsection (a), provided that Customs notifies the importer of the extension and articulates one of three statutory reasons for the extension. 19 U.S.C. § 1504(b), (c). In addition, Congress directed the Treasury Secretary to enact regulations further prescribing the form and manner of an extension. These regulations provide that an individual extension may not exceed one year; that no entry may receive more than three one-year extensions beyond the one-year initially provided for liquidation in section 1504(a); and that extensions granted under section 1504(b), because Customs needs additional information, must be preceded by notice to the importer and the surety of the extension issued before termination of any previous extension period. 19 C.F.R. § 159.12(a)(1), (b), (d) and (e) (1993). Further, the regulations specify,

with respect to actual cost data, that the importer "shall ordinarily be required to furnish updated cost ... data at least every six months," but that time limit "may be extended ... if such extension is appropriate for the type of merchandise involved, ... or because of other relevant circumstances." 19 C.F.R. § 10.21.

This extensive statutory and regulatory design tempts us to agree with Customs' contention that there is no limitation whatsoever on its use of the four-year liquidation period, provided that it extends the initial one-year, and each subsequent, period for a statutory reason and gives the requisite notice of extension. As we interpret the statute at issue in this appeal, however, we cannot lose sight of the proposition that the Secretary exercises discretion in determining how best to collect import duties. 19 U.S.C. § 3. Although we agree that courts should ordinarily defer to a Customs' determination that it needs additional information in order to liquidate an entry, we cannot uphold a decision to extend the liquidation period if it can be shown that the importer, or some other entity, eliminated all reasonable bases for making that decision. Extending a period of liquidation with actual knowledge that no basis exists for so doing would be an abuse of Customs' discretion. *See Detroit Zoological,* 630 F.Supp. at 1357; *see also Heraeus–Amersil, Inc. v. United States,* 795 F.2d 1575, 1580 & n. 7 (Fed.Cir.1986) (Secretary's action on a request to find an established and uniform Customs practice reviewed for abuse of discretion) (citing *Rank Precision Indus. Inc. v. United States,* 660 F.2d 476, 480 (CCPA 1981)), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). We thus conclude that Customs may, for statutory purposes and with the requisite notice, employ up to four years to effect liquidation so long as the extensions it grants are not abusive of its discretionary authority. Such an abuse of discretionary authority may arise only when an extension is granted even following elimination of all possible grounds for such an extension. There is, in sum, a narrow limitation on Customs' discretion to extend the period of liquidation.

In determining whether Customs' decisions to extend the periods of liquidation for Carreon's imports were sufficiently unreasonable to constitute an abuse of discretion, we must accept the fact that Congress has directed the Court of International Trade to presume that Customs' decisions are correct and that it is St. Paul's burden to prove otherwise. 28 U.S.C. § 2639(a)(1) (1988). In other words, Customs' decisions to extend are entitled to a presumption of legality unless St. Paul can prove that these decisions were unreasonable. 28 U.S.C. § 2639(a)(1); *see Jarvis Clark Co. v. United States,* 733 F.2d 873, 878 (Fed.Cir.1984). Before reaching the question of whether St. Paul, on the record before us, met this burden of proof, we first must consider and decide what quantum of evidence is required in order for St. Paul to meet that burden on the question of reasonableness.

The quantum issue in this appeal is a matter of first impression. In civil actions there are two generally recognized burdens of persuasion (or quanta of proof): the "clear and convincing" standard and the "preponderance of the evidence" standard. Section 2639 of Title 28 addresses burdens of proof in certain civil actions before the Court of International Trade. Subsection 2639(a)(1) is silent on the quantum of evidence needed to prove a post-importation Customs decision incorrect. By contrast, with respect to challenges to Customs' rulings mounted before importation, section 2639(b) requires an importer to prove his case by clear and convincing evidence. 28 U.S.C. §§ 1581(h), 2639(b) (1988). Because pre-importation challenges to Customs' rulings in essence seek injunctive relief, Congress noted that "the party bringing the civil action must demonstrate by clear and convincing evidence that he would suffer irreparable harm if forced to obtain judicial review [following importation of the merchandise]." H.R.Rep. No. 1235, 96th Cong., 2d Sess. 58 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3729, 3770. The statute and the legislative history thus indicate that Congress set a demonstrably greater burden on the making of pre-importation challenges to Customs' rulings than it did on post-importation challenges of Customs' rulings. Given that Congress explicitly imposed a high bur-

den of persuasion on the importer when mounting a pre-importation challenge to a Customs ruling, and given that subsection (b) which contains the "clear and convincing" standard follows subsection (a) in the statute, we find no reason in the statute or its legislative history to import the clear and convincing standard from subsection 2639(b) to subsection 2639(a).

■ The "preponderance of the evidence" formulation is the general burden assigned in civil cases for factual matters. Vaughn C. Ball et al., *McCormick's Handbook of the Law of Evidence* § 339 (Edward W. Cleary ed., 2d ed. 1972). We have approved the use of the "preponderance of the evidence" standard in a challenge to a Customs classification. *See Nissho Iwai Am. Corp. v. United States*, 842 F.2d 320, 321 (Fed.Cir.1988) (affirming Court of International Trade's judgment that plaintiff failed to prove insignia only incidentally decorative by a preponderance of the credible evidence). This court has also found "preponderance of the evidence" to be the appropriate burden of persuasion in determining the *bona fides* of a buying commission when reviewing the imposition of an antidumping duty order by the Department of Commerce. *LMI–La Metalli Industriale, S.p.A. v. United States*, 912 F.2d 455, 459 (Fed.Cir.1990). In light of the standard articulated in these trade cases and in the absence of direction from Congress on this issue, we conclude that the higher "clear and convincing" burden of persuasion is inappropriate for post-importation challenge of Customs' rulings and that section 2639(a)(1) requires St. Paul to overcome the presumption of correctness accorded Customs' decisions to extend by a preponderance of the evidence.

■ We have defined preponderance of the evidence in civil actions to mean "the greater weight of evidence, evidence which is more convincing than the evidence which is offered in opposition to it." *Hale v. Department of Transp., Fed. Aviation Admin.*, 772 F.2d 882, 885 (Fed.Cir.1985). Before the Court of International Trade, St. Paul argued that Customs' decisions to extend were unreasonable because Customs should have known that Carreon would not submit the

required cost data. To support its contention, St. Paul argued that there was no written evidence of any contact between the Customs official charged with liquidating Carreon's imports following Carreon's submissions at the time of importation. Customs countered by providing evidence that it is customary practice for import specialists to communicate verbally about the submission of cost data with the importer, and that such communications might not be reflected in the written records. Moreover, as Customs argued, the government is entitled to rely on a presumption of regularity, to wit, it may be presumed that the import specialist assigned to Carreon's entries properly performed her duties by communicating verbally with Carreon before extending the liquidation periods. *See, e.g., Immigration & Naturalization Serv. v. Miranda*, 459 U.S. 14, 18, 103 S.Ct. 281, 283, 74 L.Ed.2d 12 (1982) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971)); *United States v. Roses Inc.*, 706 F.2d 1563, 1566 (Fed.Cir.1983). In this particular case, neither party could present testimony of the import specialist assigned to Carreon at the time the extensions were granted because she had retired and then died, and St. Paul proffered no evidence that Carreon had no communications with the import specialist about submitting cost data.

In order for St. Paul to prevail in this case, it would have had to prove that Carreon, or someone else, notified Customs that the required cost data would *not* be submitted. In the absence of such proof, we hold that the court erred as a matter of law in concluding that St. Paul had met its burden of proof. By focusing its attention on a constructive "agreement" to provide information between Carreon and Customs, the court treated a question of fact as a matter of law making it possible to resolve the case on St. Paul's motion for summary judgment. In the process, the court, in effect, relieved St. Paul of its burden of persuasion. Because St. Paul failed to prove that Carreon would refuse to provide additional information, the court could not hold that Customs' decisions to extend the liquidation periods were unreasonable. Therefore, the court erred in hold-

ing that Customs abused its discretion by so doing.

 Congress has given Customs authority to employ up to four years to liquidate entries when properly noticed extensions are granted for statutory reasons. When seeking information needed for the proper appraisement or classification of the merchandise, Customs has no duty to inquire whether the required information will be forthcoming, and Customs may employ the full four-year period unless it has actual knowledge that the required information will not be submitted. Only if Customs has such knowledge, clearly not the case here, can it abuse its discretion by granting further extensions.

### VII

Before the Court of International Trade, St. Paul argued in the alternative that certain entries were liquidated by operation of law at the duty-free rate because Customs failed to issue first extensions for seven entries and second extensions for three entries. After holding that Customs had abused its discretion in granting all the second and third extensions the court did not address this alternative argument. We therefore remand the case to the Court of International Trade to determine whether Customs issued these disputed extensions.

*REVERSED and REMANDED.*