**Slip Op. 02-149**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: HON. RICHARD W. GOLDBERG, SENIOR JUDGE**

|  |  |
|---|---|
| STEMCOR USA, INC.,<br><br>              Plaintiff,<br><br>       v.<br><br>UNITED STATES,<br><br>              Defendant. | Court No. 00-01-00048 |

[Defendant's Motion for Summary Judgment is denied in part and granted in part.]

Dated: December 17, 2002

Follick & Bessich (Glenn H. Ripa, John A. Bessich, and Don M. Obert) for plaintiff Stemcor USA, Inc.

Robert D. McCalllum, Jr., Assistant Attorney General; John J. Mahon, Acting Attorney in Charge; Aimee Lee, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; Beth C. Brotman, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of Counsel, for defendant United States.

**OPINION**

**GOLDBERG, Senior Judge:** This case involves the proper marking of steel bars imported from Turkey. Defendant moves for summary judgment against plaintiff Stemcor USA, Inc. ("Stemcor"), pursuant to U.S.C.I.T. Rule 56. Stemcor asserts that it is entitled to a marking exception because re-marking the steel bars

is prohibitively expensive, and that the United States Customs Service ("Customs") impermissibly exceeded its discretion when it issued a Notice of Extension for liquidation of the subject entry.

### Background

This case involves entry number 110-09-0982052-1, which was filed at the Port of San Juan, Puerto Rico on July 18, 1996. The merchandise was released to Stemcor on that same day. It is unclear from the papers submitted to the Court the procedure under which the goods were released to Stemcor. There is no evidence of whether Stemcor requested immediate entry of the goods without inspection, or whether the goods were conditionally released to Stemcor. The merchandise consisted of 16,957 bundles of deformed concrete reinforcing steel bars made in Turkey and imported by Stemcor. The bars were individually marked with the letters "TR" at one end and were transported in bundles held together with steel straps. Tags reading "Made in Turkey" were attached at both ends of each bundle.

At the repeated prodding of a Stemcor competitor, Customs visited a Stemcor customer on or before August 13, 1996, to examine a portion of the subject merchandise.[1] Customs

_____

[1] At oral argument before the Court on September 25, 2002, Customs first informed the Court and Plaintiff that Customs' decision to examine the subject merchandise was due to repeated allegations by a Stemcor competitor that the merchandise was improperly marked. Customs' reason for examining the merchandise

determined that the individual bars were not properly marked with the name of their country of origin.[2]  On August 13, 1996, Customs issued Customs Form 4647, Notice of Marking, indicating that Stemcor should re-mark the merchandise in conformity with 19 U.S.C. § 1304(a), which requires that merchandise be marked, as legibly, indelibly, and permanently as the nature of the article will permit, to indicate to an ultimate purchaser in the United States the English name of the country of origin.  Customs also indicated that its supervision of the re-marking was not required.  The Notice directed that upon completion of the re-marking, Stemcor should complete a certification form and return it to Customs.  Stemcor responded in writing to the Notice of Marking on August 22, 1996, indicating its belief that marking the individual bars with the country of origin was unnecessary under applicable statutes and regulations.  It is apparent through several letters to Stemcor's customers dated August 22, 1996, that Stemcor had already released many of the bundles into the U.S. market by August 13, 1996; however, it is unclear from the papers before the Court the exact number of bundles of bars

---

is likely not a material fact in this case, but Customs' behavior is very troubling to the Court.  Through Customs' actions, 26 days had passed after entry and release of the subject merchandise before Customs issued the Notice of Marking.

[2]  Stemcor now concedes that the marking "TR" does not properly indicate the country of origin under 19 U.S.C. § 1304(a).

that had been sold and entered the U.S. market by the date of the Notice of Marking.

On June 14, 1997, Customs issued a Notice of Extension to Stemcor, which allowed Customs additional time to liquidate the entry before it would have been liquidated by operation of law on its one-year anniversary date, July 18, 1997. Customs liquidated the subject entry on July 28, 1997, and assessed ten percent marking duties as a result of Stemcor's failure to re-mark the merchandise.

Stemcor filed a timely protest and application for further review on October 14, 1997, claiming that the subject merchandise was properly marked within the meaning, spirit, and intent of § 304 of the Tariff Act of 1930. Stemcor also claimed it was exempted from the marking requirement under 19 C.F.R. § 134.32(o) because re-marking was prohibitively expensive, and that the entry liquidated by operation of law as entered on its one-year anniversary date under 19 U.S.C. § 1504.[3]

In response, Customs issued Headquarters Ruling Letter 561008 on August 4, 1999. Customs reliquidated the entry with respect to 2,117 of the bundles without the assessment of ten

---

[3] An entry liquidated by operation of law on its one-year anniversary date is liquidated at the rate of duty, value, quantity, and amount of duties assessed at the time of entry by the importer of record. 19 U.S.C. § 1504(a) (2000).

percent marking duties.[4]  However, the remaining 14,840 bundles in the entry were denied relief, and are the subject of this action.

### Standard of Review

Congress has directed the Court of International Trade to presume that Customs's decisions are correct.  28 U.S.C. § 2639(a)(1) (2000); see also St. Paul Fire & Marine Insurance Co. v. United States, 12 Fed. Cir. (T) 1, 7, 6 F.3d 763, 768 (1993); Brother International Corp. v. United States, 26 CIT __, Slip Op. 02-80 at 5 (July 31, 2002).  The statutory presumption of correctness is "a procedural device that is designed to allocate, between the two litigants in a lawsuit, the burden of producing evidence in sufficient quantity."  Brother International Corp., Slip Op. 02-80 at 5 (quoting Universal Elecs. Inc. v. United States, 112 F.3d 488, 492 (Fed. Cir. 1997)).  To overcome this presumption, a plaintiff must show by a preponderance of the evidence that Customs' decision was unreasonable.  St. Paul Fire & Marine, 12 Fed. Cir. (T) at 7, 6 F.3d at 768.

If a plaintiff is unable to produce sufficient evidence to meet this burden, summary judgment may be appropriate.  Under Rule 56 of the Rules of the Court of International Trade, summary judgment is proper "if the pleadings, depositions, answers to

---

[4]  These bundles were reliquidated because Stemcor could show that they were delivered to end consumers still bundled, and consequently with the "Made in Turkey" tag.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A dispute is genuine "if the evidence is such that [the trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment should be granted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

## **Discussion**

The government filed for summary judgment on both of Stemcor's claims. Stemcor first claimed it is entitled to a marking exception under 19 C.F.R. § 134.32(o) (2002) because the cost of re-marking the merchandise after importation would have been economically prohibitive. Stemcor also claimed that Customs abused its discretion when it issued a Notice of Extension for liquidation of the subject entry. Each of these arguments is addressed in turn.

A.   **There exist genuine issues of material fact that Customs' denial of Stemcor's request for a marking exception under 19 C.F.R. § 134.32(o) was unreasonable.**

Merchandise entering the commerce of the United States must be marked, as legibly, indelibly, and permanently as the nature of the article will permit, to indicate to an ultimate purchaser in the United States the English name of the country of origin. See 19 U.S.C. § 1304(a) (2000). When merchandise is not marked properly, § 1304(i) mandates the assessment of a ten percent marking duty if the improperly marked merchandise is not exported, destroyed, or re-marked under the supervision of Customs prior to liquidation of the entry. 19 U.S.C. § 1304(i) (2000); see also Frontier Insurance Co. v. United States, 26 CIT __, __, 185 F. Supp. 2d 1375, 1379 (2002). Merchandise may be exempted from the marking requirement if it "cannot be marked after importation except at an expense that would be economically prohibitive." 19 U.S.C. § 134.32(o).

Customs sent Stemcor a Notice of Marking, indicating that Stemcor must re-mark the bars and submit a certificate of re-marking to Customs. Under § 1304, Stemcor then had the option to re-mark the bars as required, or export or destroy them. However, by the date of the Notice of Marking Stemcor had already released many of the bundles of bars into the U.S. market. Stemcor released the remaining merchandise into commerce without submitting a certificate of re-marking. This is in contradiction

to Customs' instructions, which read, "WARNING: all merchandise must be retained until you are notified by Customs that corrective action is acceptable." See Complaint, Exhibit C, Notice of Marking.

In its complaint, Stemcor claims that it is entitled to a marking exception under 19 C.F.R. § 134.32(o), on the grounds that re-marking the bars is economically prohibitive. Customs argues in its summary judgment motion that because Stemcor had already released the merchandise into the U.S. market, Stemcor is precluded from claiming a re-marking exception under § 134.32(o). According to Customs, because 19 U.S.C. § 1304(i) mandates that re-marking is to take place "prior to the liquidation of the entry covering the article," it follows that any exception to this requirement must be sought prior to liquidation of the entry and prior to the release of the goods into the U.S. market. Stemcor sought the exception at the protest stage, after liquidation and after it released the bars into commerce, making any re-marking of individual bars or bundles an impossibility. Therefore, under Customs' analysis, Stemcor is precluded from claiming a re-marking exception under § 1304(i).

The Court does not agree with Customs. There is no time limit for Stemcor to claim the re-marking exception under the language of 19 C.F.R. § 134.32(o), nor any requirement this exception must be claimed prior to liquidation of the entry.

Significantly, there is no requirement in the regulations that a claim for the re-marking exception must be made before the merchandise is released into the U.S. market.  Therefore, Stemcor can assert a claim for a re-marking exception under 19 C.F.R. § 134.32(o).

Having timely applied for the exception, Stemcor must demonstrate there are genuine issues of material fact as to whether re-marking the bars is economically prohibitive.  An importer is entitled to a marking exception if the importer can show (1) that the cost of marking the subject merchandise after importation would be economically prohibitive; and (2) that the importer, producer, seller, or shipper did not fail to mark the articles before importation in order to avoid meeting the requirements of law.  Customs does not dispute that Stemcor's failure to mark the items before importation was not an attempt to avoid the law.

As to the first element of the marking exception, there are genuine issues of material fact whether the proof submitted by Stemcor is sufficient.  Stemcor suggested one option for re-marking—attaching individual sticker labels to each bar—and set forth cost figures allegedly associated with that method of re-marking.  There were no estimates or invoices to support Stemcor's re-marking cost figures; nor did Stemcor provide cost figures for any alternatives to attaching sticker labels to the

bars.  However, the president of Stemcor claims in his affidavit that "Stemcor has made *bona fide* inquiries with respect to the expenses involved in the re-marking." <u>Affidavit of Peter Blohm</u>.

Another issue of material fact is whether Customs' reasonably considered Stemcor's request for the re-marking exception.  In denying the re-marking exception, Customs only briefly discussed the exception and never commented on the evidence submitted by Stemcor:

> The other exception that counsel raised in this case is 19 CFR 134.32(o), which excepts from marking articles which cannot be marked after importation except at an expense that would be economically prohibitive.  This exception is not available if the failure to mark was to avoid meeting the requirements of the law.
>
> The language of 19 U.S.C. 1304(f) clearly states that if the conditions for payment of marking duties exist, the marking duties "shall not be avoidable for any cause."  Since in this case, the goods were not properly marked when entered and the goods were not exported, destroyed, or re-marked under Customs supervision, we find that pursuant to 19 U.S.C. 1304(f) (1996), the exception set forth at 19 CFR 134.32(o) is inapplicable.

Headquarters Letter 561008, August 4, 1999, at 11.  Such an interpretation of the regulations by Customs essentially eliminates the exception in 19 C.F.R. § 134.32(o) from the regulations.  Based on the foregoing discussion, genuine issues of material fact exist as to whether Customs' denial of Stemcor's claim for a re-marking exception was unreasonable.

**B.    Customs acted reasonably in issuing a Notice of
        Extension for liquidation of the subject entry.**

Customs has considerable discretion in administering Customs law.  Under 19 U.S.C. § 3, "[t]he Secretary of the Treasury shall direct the superintendence of the collection of the duties on imports as he shall judge best."  See also National Corn Growers Ass'n v. Baker, 6 Fed. Cir. (T) 70, 75-76, 840 F.2d 1547, 1554-55 (1988).  Customs may extend the entry liquidation period for up to four years if it requires information "for the proper appraisement or classification of the merchandise, or for insuring compliance with applicable law, [that] is not available to the Customs service." 19 U.S.C. § 1504(b)(1) (2000).  Information that Customs needs is construed to include "whatever is reasonably necessary" for proper appraisement or classification, and includes information sought from within the agency.  Detroit Zoological Soc'y v. United States, 10 CIT 133, 138, 630 F. Supp. 1350, 1356 (1986).

There exists a narrow limitation on Customs' discretion to extend the period of liquidation, which arises "only when an extension is granted . . . following elimination of all possible grounds for such an extension."  St. Paul Fire & Marine, 12 Fed. Cir. (T) at 7, 6 F.3d at 768 (emphasis added).  Upon review, Customs' decision to extend a period of liquidation is entitled to a presumption of correctness, unless the importer can prove by a preponderance of the evidence that the decision was

unreasonable. 28 U.S.C. 2639(a)(1) (2000); see also St. Paul Fire & Marine, 12 Fed. Cir. (T) at 7, 6 F.3d at 768. Accordingly, in this case Stemcor bears the burden of proof, and must eliminate all possible grounds for the extension in order to demonstrate that Customs abused its discretion. Id.

Stemcor argues that the information Customs sought was available when the extension was issued, and that Customs was lax in not requesting additional information of Stemcor. However, 19 U.S.C. § 1504(b) does not specify that the information must come from the plaintiff. Thus, Customs may justify an extension of liquidation even "if additional time is needed to obtain [ ] internal advice and to consider it before making the classification decision." Detroit Zoological Soc'y, 630 F.Supp. at 1356-57 (emphasis added).

Here, the evidence indicates that Customs was considering the marking issue internally during the extension period. First, Customs was internally evaluating Stemcor's position that the goods were properly marked and that Stemcor's customers were aware that Turkey was the country of origin. Second, Customs was assessing the amount of marking duties, which is an appraisal issue for which Customs may extend the liquidation period. See 19 U.S.C. § 1504(b)(1). Finally, Customs was ensuring Stemcor's compliance with applicable law, another basis upon which Customs may extend the liquidation period. Id. That Customs sought this

information internally, rather than from Stemcor, does not constitute an unreasonable basis for issuing an extension. See Detroit Zoological Soc'y, 630 F.Supp. at 1356-57.

Stemcor also contends that Customs did not need extra time to get the aforementioned internal information, and that the extension was the result of Customs' laxity. Stemcor cites the fact that Customs had approximately 11 months to gather the information it required, yet did not pursue the information until almost 10 months after issuing the Notice of Marking. Specifically, Stemcor premises its argument on its disbelief that Customs officials were unable to discuss earlier whether the letters "TR" were a sufficient country of origin marking.

Stemcor's claim of Customs' laxity must fail for two reasons. First, there is no legal claim for laxity. Rather, Stemcor must show by a preponderance of the evidence that Customs acted unreasonably; otherwise, the correctness of Customs' decision to extend the liquidation period is presumed. See St. Paul Fire & Marine, 12 Fed. Cir. (T) at 7, 6 F.3d at 768. Thus, Stemcor must not only show that Customs was lax, but must show by a preponderance of the evidence that it was unreasonably so.

Stemcor also lacks sufficient proof that Customs acted unreasonably. Stemcor has not presented any evidence to support its assertions that when the import specialist realized the one-year liquidation deadline was arriving she rushed to gain

additional time, or that the delay was caused by Customs' laxity.
Moreover, Customs' letter to the record, dated July 8, 1997,
indicates that Customs officials were actively considering the
marking issue.  See Defendant's Motion for Summary Judgment,
Exhibit C.  That this document does not reference any other
conversations or ongoing discussions does not prove that Customs
was not considering the matter prior to issuing the Notice of
Extension.  Thus, Stemcor has failed to meet its burden of
showing that Customs had no reasonable basis for issuing the
extension.

Finally, Stemcor argues that the letters "TR" so obviously
do not constitute sufficient country of origin marking under the
language of 19 U.S.C. § 1304, that Customs did not need any
additional time.  Stemcor cites Densten Felt & Hair Co. v. United
States, 1 Cust. Ct. 416 (1938), in which the initials "U.S.S.R."
were insufficient to indicate country of origin of the subject
merchandise, in support of its argument.  However, since "TR" is
not an acceptable marking for Turkey, Customs arguably needed the
time to ensure Stemcor's compliance with applicable laws.
Stemcor provides the Court with no evidence to refute this
reasonable basis for the extension.

For the foregoing reasons, Stemcor has failed to eliminate
all possible grounds for Customs' extension of the liquidation
period, and is thus unable to overcome the presumption of

correctness afforded to Customs' decisions. Customs therefore properly exercised its discretion to issue the Notice of Extension.

## Conclusion

Stemcor has created genuine issues of material fact as to whether Customs' denial of Stemcor's request for a marking exception under 19 C.F.R. § 134.32(o) was unreasonable. Therefore, Customs' motion for summary judgment on that issue is denied. Stemcor has not created a genuine issue of material fact that Customs' decision to issue the extension was unreasonable. Therefore, Customs' motion for summary judgment on the issue of the extension of the liquidation period is granted.

---

**Richard W. Goldberg, Senior Judge**

**Date: December 17, 2002**
**New York, New York.**

**ERRATA**

<u>Stemcor USA, Inc. v. United States</u>, Court No. 00-01-00048, Slip
Op. 02-149, issued December 17, 2002.

- On page 15, after the sentence which reads "Therefore,
  Customs' motion for summary judgment on the issue of the
  extension of the liquidation period is granted"

  insert the following sentence

  "The parties are to confer and contact chambers within
  thirty days to report on timing for a trial in this matter."