# United States Court of Appeals for the Federal Circuit

---

**UNITED STATES,**
*Plaintiff-Appellee,*

**v.**

**C.H. ROBINSON COMPANY,**
*Defendant-Appellant.*

---

2013-1168

---

Appeal from the United States Court of International Trade in No. 06-CV-0434, Judge Leo M. Gordon.

---

Decided: July 28, 2014

---

STEVEN M. MAGER, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for plaintiff-appellee. With him on the brief were STUART F. DELERY, Assistant Attorney General, JEANNE E. DAVIDSON, Director, PATRICIA M. MCCARTHY, Assistant Director, and SHELLEY WEGER, Trial Attorney. Of counsel on the brief was ANDREW KOSEGI, Deputy Assistant Chief Counsel, United States Customs and Border Protection, Indianapolis, Indiana.

RICHARD F. O'NEILL, Neville Peterson LLP, of New York, New York, argued for defendant-appellant. With him on the brief was JOHN M. PETERSON.

---

Before O'MALLEY, REYNA, and WALLACH, *Circuit Judges.*

REYNA, *Circuit Judge.*

C.H. Robinson Company ("C.H. Robinson") appeals the final decision of the U.S. Court of International Trade finding C.H. Robinson liable for duties, taxes, and fees for certain entries of wearing apparel from China. *United States v. C.H. Robinson Co.*, 880 F. Supp. 2d 1335 (Ct. Int'l Trade 2012). For the reasons below, we *affirm*.

## BACKGROUND

This appeal arises out of an action brought by the United States against C.H. Robinson, a Customs-bonded carrier, to recover certain duties, taxes, and fees under Section 553 of the Tariff Act of 1930, 19 U.S.C. § 1553, and 19 C.F.R. § 18.8(c). Specifically, the Government seeks to recover duties, taxes, and fees accrued for three entries ("subject entries") of wearing apparel from the People's Republic of China ("subject merchandise"), which entered the United States as Transportation & Exportation ("T&E") entries but were never exported and are currently "missing."

The subject merchandise entered the United States in December 2001 at the Port of Los Angeles under T&E numbers 609.203.744, 609.203.873, and 609.203.862. Intercambio Comercial Ekim S.A. ("Intercambio"), a Mexican company, was the importer of record and consignee of the subject merchandise. The T&E entry documents designated C.H. Robinson as the bonded carrier and indicated that the merchandise was to be delivered to the care of L.E. Forwarding & Freight Broker ("L.E. Forwarding") in Laredo, Texas, for exportation to Mexico.

C.H. Robinson engaged Mario's Transports Inc. to transport the subject merchandise from Los Angeles to Laredo.

Although there is no dispute that the subject merchandise left Los Angeles, it is not clear what happened to the merchandise after that. What is known is that, on January 2 and 4, 2002, Mario Peña, Inc. ("Peña"), a U.S. licensed customs broker, stamped the T&E entry documents (Customs Forms 7512) at an unmonitored stamp machine in the lobby of the export lot of the U.S. Customs Service ("Customs") at the Port of Laredo. Peña did not transport the subject merchandise to the export lot, nor did he see, inspect, or take possession of the subject merchandise. Peña's official log book shows receipt of the T&E entry forms, but does not show a corresponding date of exportation for each entry.

Customs never inspected or took possession of the subject merchandise at the Port of Laredo. At the time, Customs used a self-regulating process at the Port of Laredo in which Customs did not supervise exportation or require carriers to report their arrival at the port of destination or the exportation of the merchandise. Instead, Customs relied on a post-audit system designed to ensure compliance with procedures for T&E entries. Through this post-audit system, Customs selectively required carriers to demonstrate disposition of the merchandise upon Customs' request. The combined reliance on an export lot and a post-audit process was neither uncommon nor unusual at the time, in particular along the U.S.-Mexico border.

In March 2002, Customs initiated a post-audit on the subject merchandise and contacted C.H. Robinson requesting information regarding the disposition of the merchandise. C.H. Robinson informed Customs that the merchandise had been exported to Mexico. As proof of exportation, C.H. Robinson submitted the stamped T&E

entry forms and three stamped Mexican importation forms, or "pedimentos," that were provided by Intercambio.

Customs contacted Mexican Customs authorities to verify the authenticity of the pedimentos. After Mexican authorities confirmed that the pedimentos were false, Customs issued three notices of liquidated damages claims against C.H. Robinson's custodial bond, each for $25,000. The notices charged C.H. Robinson with misdelivery of the subject merchandise in violation of 19 C.F.R. § 18.8. In response, C.H. Robinson submitted administrative petitions to Customs, seeking a reduction in the amount of liquidated damages. Based upon mitigation guidelines, Customs reduced the amount of liquidated damages owed for the three subject entries from $75,000 to $57,212.

C.H. Robinson paid the $57,212 in 2004 and filed a complaint in the U.S. Court of Federal Claims seeking a full refund. The Court of Federal Claims stayed the action to permit the Government to pursue collection of duties against C.H. Robinson. Customs made a demand on C.H. Robinson, pursuant to 19 U.S.C. § 1553 and 19 C.F.R. § 18.8(c), for payment of $106,407.86, plus interest, for duties, taxes, and fees owed on the subject entries. The demand explained that C.H. Robinson failed to ensure that the subject merchandise was exported to Mexico and, consequently, "[t]he goods subject to quota/visa restrictions were diverted into the United States resulting in a loss of lawful duties due to the government." Joint Appendix ("J.A.") at 207. C.H. Robinson did not protest the demand or pay the duties, and its challenge to Commerce's assessment of liquidated damages pending before the Court of Federal Claims remained stayed.

In 2006, the Government filed the present action in the Court of International Trade seeking to recover the

$106,407.86 in unpaid duties, taxes, and fees. In March 2007, C.H. Robinson moved to dismiss the Government's complaint for failure to state a claim upon which relief may be granted, alleging that 19 U.S.C. § 1553 does not allow the collection of duties. The Court of International Trade denied C.H. Robinson's motion to dismiss, explaining that section 1553 contemplates that Customs will promulgate regulations governing T&E entries and, in turn, 19 C.F.R. § 18.8(c) imposes an obligation on the bonded carrier to pay duties on any "missing" merchandise. In January 2010, the Court of International Trade further clarified that the Government would bear the burden of persuasion at trial to show by a preponderance of the evidence that the subject merchandise is "missing" within the meaning of § 18.8(c). The court also noted that the Government's burden of persuasion may be satisfied by "cast[ing] enough suspicion over the exportation/non-exportation of the merchandise for the fact-finder to conclude that the merchandise was not exported." J.A. at 55.

Following a bench trial, the Court of International Trade found C.H. Robinson liable for the duties, taxes, and fees demanded by the Government. First, the court found that the Government established by a preponderance of the evidence that the subject merchandise was missing. Among other evidence, the court considered expert testimony by the Assistant Commissioner for Post-Import and Commercial Fraud for the Mexican Customs Service, Rodolfo Torres Herrera, who confirmed that the pedimentos were false and contained numerous discrepancies that were unverifiable by search of official Mexican electronic databases: the name of the Mexican customs broker did not match the broker license number; the tax identification number and population registration number for the broker did not exist; and there was no record of a relationship between the importing company and the broker or the bank listed as having received payment of

Mexican customs duties. *See C.H. Robinson*, 880 F. Supp. 2d at 1341-42. Mr. Torres Herrera testified that, in his experience, illegal entry (i.e., smuggling) of merchandise into Mexico is most often accomplished by using pedimentos that, unlike the pedimentos submitted by C.H Robinson, are valid in all respects except for the listed country of origin, so as to minimize the risk of raising suspicion at the various Mexican checkpoints through which all truck cargo must pass upon crossing the U.S./Mexico border. *See id.* at 1343. Mr. Jesus Alberto Fernandez Wilburn, the Port Director of Colombia, Nuevo Leon, Mexico, further testified that Mexican Customs would have seized cargo whose pedimentos did not appear in Mexican Customs' electronic database and that there is no record that Mexican Customs seized the merchandise at issue in this case. *See id.*

The Court of International Trade further found that C.H. Robinson failed to account for the missing merchandise. The court noted that C.H. Robinson conceded at trial that the pedimentos were not genuine and could not be verified by Mexican authorities. *Id.* at 1345. The court also found that none of the evidence submitted by C.H. Robinson—the pedimentos, driver hand tags and freight bills, and Mr. Peña's log book—showed that the subject merchandise was exported to Mexico; at most, the evidence demonstrated proof of delivery of the subject merchandise to the Port of Laredo in accordance with 19 C.F.R. § 18.8(c). *See id.* at 1344. The court concluded that C.H. Robinson, as the bonded carrier, not only had a responsibility to deliver the merchandise at the destination port, but also to ensure that the subject merchandise was either exported or lawfully entered into the United States. *See id.* at 1347. Accordingly, the court found C.H. Robinson liable for duties, taxes, and fees under 19 U.S.C. § 1553 and 19 C.F.R. § 18.8(c).

C.H. Robinson timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

DISCUSSION

We review the Court of International Trade's legal determinations without deference. *United States v. Ford Motor Co.*, 463 F.3d 1286, 1290 (Fed. Cir. 2006). Its findings of fact are reviewed for clear error. *Id.*[1]

Generally, merchandise imported into the United States may be entered for consumption, entered for warehouse, admitted into a foreign trade zone, or entered for transportation in-bond to another port. Transportation in-bond allows movement of imported merchandise from one port to another port in the United States without appraisement or payment of duties, provided a transportation entry document is filed (Customs Form 7512) and a bond is paid. Once the merchandise arrives at a destination port in the United States, the merchandise may be officially entered into U.S. commerce and duties and other imposts or charges are paid, or the merchandise may be exported and duties and charges are not paid. For example, in this case, imports of the subject merchandise from China would be subject to normal duties and, potentially, to other charges arising from import quotas and other trade restrictions applicable to certain apparel products originating from China.

A T&E entry is the type of in-bond movement typically used when merchandise is to be exported at a port other than the port of entry. *See* 19 U.S.C. § 1553(a). A bonded carrier transporting merchandise pursuant to a T&E entry must comply with certain regulations governing the receipt, safekeeping, and disposition of bonded

---

[1]   Indeed, this court has acknowledged the expertise of the Court of International Trade in these matters is often reflected in its informed decisions. *See Diamond Sawblades Mfrs. Coal. v. United States*, 612 F.3d 1348, 1356 (Fed. Cir. 2010).

merchandise.    Under  19 C.F.R.  § 18.8(a),  the  bonded
carrier is responsible for any "shortage, irregular delivery,
or nondelivery at the port of destination or exportation of
bonded  merchandise  received  by  it  for  carriage."
19 C.F.R. § 18.8(a).  The bonded carrier may be liable for
liquidated damages under the carrier's bond for any such
shortage, failure to deliver, or irregular delivery.  *Id.*
§ 18.8(b).  Additionally, the bonded carrier may be liable
for duties:

> (c) In addition to the penalties described in para-
> graph (b) of this section, the carrier shall pay any
> internal-revenue taxes, duties, or other taxes ac-
> cruing to the United States on the missing mer-
> chandise, together with all costs, charges, and
> expenses caused by the failure to make the re-
> quired transportation, report, and delivery.

*Id.* § 18.8(c).

The Court of International Trade held C.H. Robinson
liable under § 18.8(c) because the court found that the
Government established by a preponderance of the evi-
dence that the subject merchandise is "missing" and C.H.
Robinson failed to account for the merchandise.   On
appeal, C.H. Robinson does not challenge the validity of
the regulation, but argues instead that the subject mer-
chandise is not "missing" within the meaning of § 18.8(c).
Specifically, C.H. Robinson urges us to interpret the term
"missing" in § 18.8(c) as limited to losses occurring prior
to delivery, i.e., as a result of a shortage, failure to deliver,
or irregular delivery.   According to C.H. Robinson, a
bonded carrier transporting merchandise under a T&E
entry is only responsible for delivering the merchandise at
the port of exportation and not for any losses occurring
after that.   C.H. Robinson contends that the stamped
T&E entry forms it provided in this case are conclusive
proof that it fulfilled its duty irrespective of what hap-

pened to the merchandise after arriving at the Port of Laredo.

We agree with C.H. Robinson that the bonded carrier of merchandise imported under a T&E entry is only responsible for ensuring delivery, not exportation. However, although "properly receipted" Customs forms may constitute acceptable proof of delivery under 19 C.F.R. § 18.8(a), such proof is not conclusive. Customs retains the authority to verify that delivery in fact occurred. As part of such verification, for example, Customs may request, as it did in this case, additional evidence of proper delivery to the port of exportation, such as bills of lading or delivery receipts. If a preponderance of the evidence demonstrates that the bonded merchandise was not properly delivered, stamped Customs Forms 7512 do not insulate a bonded carrier from liability for any shortage, failure to deliver, or irregular delivery.

In the case of T&E entries, evidence of proper delivery may include documents showing that the bonded merchandise was exported. Conversely, lack of exportation evidence may support a finding that delivery never occurred. Any merchandise that is imported under bond for exportation but is not actually exported must necessarily have remained within the United States and remains the carrier's responsibility unless the carrier can account for the shipment by, for example, providing proof of delivery or transfer to the exporting carrier. Accordingly, we agree with the Court of International Trade that, where merchandise is entered and transported in-bond for exportation, the bonded carrier may be required to provide evidence of delivery, even where the bonded carrier otherwise submits a properly receipted Customs Form 7512 under § 18.8(a).

As the Court of International Trade pointed out, there is no statute or regulation that imposes a burden on Customs to search for or locate merchandise to establish

that it was not properly delivered. *See C.H. Robinson*, 880 F. Supp. 2d at 1347. Customs need only establish by a preponderance of the evidence that complete delivery did not occur, which may include showing that the merchandise was not exported. If any merchandise is not exported and is otherwise unaccounted for, it is "missing" and Customs may collect duties from the bonded carrier pursuant to 19 U.S.C. § 1553 and 19 C.F.R. § 18.8(c).

C.H. Robinson relies on 19 C.F.R. § 18.7 to distinguish between the obligations of a "delivering carrier" and an "exporting carrier." While § 18.7(a) requires the "delivering carrier" to surrender the in-bond manifest (i.e., Customs Form 7512) to Customs no more than 2 working days after arrival at the port of exportation, § 18.7(c) provides that it is the "exporting carrier" who should maintain exportation records for 5 years from the date of exportation and make those records available to Customs upon request. *See* 19 C.F.R. §§ 18.7(a), (c). C.H. Robinson argues that, pursuant to the T&E entry documents, C.H. Robinson was not the exporting carrier; it was not required to take the goods to Mexico and L.E. Forwarding, the "consignee," was instead the party responsible for exportation.

We disagree with C.H. Robinson that the Court of International Trade improperly conflated an exporting carrier's obligation to provide, when asked, proof of exportation, with the delivering carrier's obligation to provide notice of arrival by surrendering the in-bond manifest to Customs. The court held C.H. Robinson liable under 19 C.F.R. § 18.8(c) because it is the bonded carrier, not the exporting carrier, and the regulation provides that the bonded carrier may be liable for duties on missing merchandise. While a bonded carrier may not be required to maintain exportation records and provide proof of exportation pursuant to § 18.7(c) unless it is also the exporting carrier, it may nonetheless be required, pursuant to § 18.8(c), to account for missing merchandise transported

under bond. In this case, the Court of International Trade correctly placed upon the Government the initial burden to show by a preponderance of the evidence that the subject merchandise was missing. Once the Government met its initial burden, C.H. Robinson's failure to provide satisfactory proof of exportation or any other evidence regarding the disposition of the merchandise exposed it to liability under § 18.8(c), irrespective of the duties imposed separately on the exporting carrier under § 18.7(c).

Finally, C.H. Robinson argues that the Court of International Trade erred when it clarified that, to establish by a preponderance of the evidence that merchandise is "missing," the Government needed only to "cast enough suspicion over the exportation/non-exportation of the merchandise for the fact-finder to conclude that the merchandise was not exported." J.A. at 55. C.H. Robinson also contends that the court erred in finding that the Government met its burden of proof entirely based on circumstantial evidence. Although we disagree with the Court of International Trade's characterization of the Government's proof to the extent it implies a lower burden than a preponderance of the evidence, the law makes no distinction between direct and circumstantial evidence; both are valid measures of proof. The only question is whether the proofs offered satisfy the applicable burden of proof, and we find that the Government met its burden in this case.

The Court of International Trade properly weighed all the evidence presented at trial in holding that, although there was "no direct evidence as to the whereabouts of the subject merchandise," the United States presented enough evidence to establish by a preponderance of the evidence that the merchandise is "missing." *C.H. Robinson*, 880 F. Supp. 2d at 1345. Specifically, the court considered documents and testimony presented by the Government that established the falsity of the pedimentos

and the fact that they could not have been used to legitimately or illegitimately introduce the merchandise into Mexico. *See id.* at 1341-43. C.H. Robinson ultimately conceded that the pedimentos were not genuine and could offer no other evidence of the disposition of the merchandise. *Id.* at 1345. C.H. Robinson might have been able to avoid liability under § 18.8(c) had it provided, in addition to the stamped forms, evidence of proper transfer or disposition of the merchandise, such as bills of lading, delivery receipts, or valid Mexican pedimentos and other documentary evidence of importation into Mexico. The stamped Customs Forms 7512 are insufficient alone to rebut the Government's showing that the subject merchandise was never delivered and is "missing" pursuant to § 18.8(c).

"Preponderance of the evidence" means "'the greater weight of evidence, evidence which is more convincing than the evidence which is offered in opposition to it.'" *St. Paul Fire & Marine Ins. Co. v. United States*, 6 F.3d 763, 769 (Fed Cir. 1993) (quoting *Hale v. Dep't of Transp., Fed. Aviation Admin.*, 772 F.2d 882, 885 (Fed. Cir. 1985)). Here, the "greater weight of the evidence" shows that the subject merchandise was not properly delivered. C.H. Robinson did not allege before the Court of International Trade, and does not allege here, that Mario's Transports delivered the subject merchandise to L.E Forwarding or to Mexico. Because the Government showed that the merchandise was not delivered and C.H. Robinson has not rebutted this showing or otherwise accounted for the subject merchandise, the Court of International Trade did not clearly err in finding that the merchandise is "missing."

CONCLUSION

The Court of International Trade's decision imposing on C.H. Robinson liability for duties, taxes, and fees in the

amount of $106,407.86 pursuant to 19 U.S.C. § 1553 and 19 C.F.R. § 18.8(c) is

**AFFIRMED**