**Slip Op. 00-152**

## UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

---------------------------------------------------------------- x

E.I. DUPONT DE NEMOURS & COMPANY　　　:

　　　　　　　　Plaintiff,　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　　　Court No. 97-12-02091

　　v.　　　　　　　　　　　　　　　　:　**Public Version**

UNITED STATES OF AMERICA,　　　　　　:

　　　　　　　　Defendant.　　　　　　　:

　　　　　　　　　　　　　　　　　　　　:

---------------------------------------------------------------- x

[Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Partial Summary Judgment denied.]

Decided: November 15, 2000.

*Crowell & Moring LLP* (*Barry E. Cohen, John I. Blanck, Jr.*), for Plaintiff.

*David W. Ogden*, Assistant Attorney General, United States Department of Justice; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office; *(Saul Davis)*, Karen P. Binder, Ellen C. Daly, United States Customs Service, Office of the Chief Counsel, Of Counsel, for Defendant.

### MEMORANDUM DECISION AND ORDER

**BARZILAY, JUDGE:**

### INTRODUCTION

This case is before the court on cross-motions for summary judgment. Plaintiff ("DuPont"), a domestic importer, contests the Defendant's ("Customs") appraisal of its imported chemical, diuron, on the basis of computed value rather than transaction value and the denial of duty-free entry under the Generalized System of Preferences ("GSP"). The statutes at issue are: 19 U.S.C. § 1401a(b)(1) (1994), 19 U.S.C. § 1401a(d)(1), 19 U.S.C. § 1401a(e)(1), and 19 U.S.C.

§ 2463 (1994).[1]  Defendant moves for partial summary judgment on the theory that at the time of entry the information before Customs supported only computed value as a basis of appraisal and DuPont did not demonstrate that the diuron met the requirements of duty-free entry under the GSP.  Defendant further claims that DuPont is now estopped from presenting new evidence before the court that was not presented to Customs administratively.  The court denies both Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Partial Summary Judgment.  There are material issues of fact as to the proper appraisement of the imported diuron and Defendant's motion must be denied as a matter of law.

## I. JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1581(a) (1994), which provides for judicial review of a denied protest filed in accordance with the provisions of 19 U.S.C. § 1514 (1994).

## II.  BACKGROUND

At issue before this court is the importation of  the agricultural herbicide "diuron technical" or "diuron flake" ("diuron").  *Pl.'s Statement of Material Facts not in Dispute*, at ¶ 1 ("*Pl.'s Statement*"); *Def.'s Resp. to Pl.'s Statement of Material Facts not in Dispute*, at ¶ 1 (*Def.'s Resp.*").  Diuron is produced from the chemical reaction of dichloropheny isocyanate ("DCPI") and dimethylamine, anhydrous ("DMA").  *Pl.'s Statement*, at ¶ 3; *Def.'s Resp.,* at ¶ 3. Diuron is manufactured by DuPont's wholly owned subsidiary DuPont do Brasil ("do Brasil").  *Pl.'s Statement*, at ¶ 1; *Def.'s Resp.,* at ¶ 1.  Do Brazil, a Brazilian corporation, sold the diuron at issue

---

[1] These provisions define and explain, respectively, transaction value, deductive value, computed value, and the requirements for the Generalized System of Preferences.

to DuPont for **[   ]** per kilogram. *Pl.'s Statement*, at ¶ 6; *Def.'s Resp.*, at ¶ 6. On April 5, 1995 DuPont imported the diuron into the United States. *Pl.'s Statement*, at ¶ 5; *Def.'s Resp.,* at ¶5. DuPont claimed **[   ]** per kilogram as its declared value for the diuron. *Pl.'s Statement,* at ¶ 6; *Def.'s Resp.*, at ¶ 6. It also claimed the imported diuron was a product or manufacture of a beneficiary developing country ("BDC") and asserted duty-free entry under the GSP. *Id.* Customs rejected DuPont's claims and used computed value to determine the appraised value of the diuron. *Pl.'s Statement,* at ¶ 11; *Def.'s Resp.,* at ¶ 11. Customs valued the diuron at $6.35 per kilogram, denied duty-free entry, and liquidated the entry at a rate of 12.8 percent *ad valorem*. Plaintiff protested Customs' liquidation and, upon denial of its protest, commenced this action.

## III.   STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." USCIT R. 56(d). Moreover, summary judgment is a favored procedural device "'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987). But "summary proceedings are not intended to substitute for trial when it is indeed necessary to find material facts." *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1570 (Fed. Cir. 1991) (citing *Meyers v. Brooks Shoes, Inc.*, 912 F.2d 1459, 1461 (Fed. Cir. 1990)). Whether a disputed fact is material is identified by the substantive law and whether the finding of that fact might affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

## IV.   DISCUSSION

**A.      DuPont is not estopped from presenting evidence it did not present administratively.**

Customs argues that DuPont should be estopped from presenting evidence before this court that it did not present administratively.  Customs bases its position on a novel combining of several statutory provisions beginning with the statutory presumption of correctness that attaches to Treasury Secretary decisions.  *See* 28 U.S.C. § 2639(a)(1) (1994).  The decisions of this court and the Federal Circuit are clear that the presumption does not attach unless an underlying factual dispute exists. "[W]e squarely held that the statutory presumption of correctness under § 2639 is irrelevant where there is no factual dispute between the parties."  *Rollerblade, Inc. v. United States*, 112 F.3d 481, 484 (Fed. Cir. 1997) (citing *Goodman Mfg. L.P. v. United States*, 69 F.3d 505, 508 (Fed. Cir. 1995); *See also Anhydrides & Chems., Inc. v. United States*, 130 F.3d 1481, 1485-86 (Fed. Cir. 1997).  Customs argues that in this case the court should follow the Federal Circuit's reasoning in a recent case discussing the presumption of correctness as it applies to Internal Revenue Service decisions.  *See Bubble Room, Inc. v. United States*, 159 F.3d 553, 568 (Fed. Cir. 1998).  For the reasons that follow, the court declines the invitation.

Customs contends that it has the authority to use the best information available to it when an importer fails to provide documentation necessary to support the importer's appraisement claims.  Congress has given Customs the authority to "fix the final appraisement of merchandise by ascertaining or estimating the value . . . by all reasonable ways and means in [Customs'] power, any statement of cost or costs of production in any invoice, affidavit, declaration, other document to the contrary notwithstanding . . . ."  19 U.S.C. § 1500(a) (1994).  In addition to express statutory authority to estimate value, Customs points to the reasonable care requirements

of 19 U.S.C. § 1484 (1994) which impose an obligation on the importer to provide "such other

information . . . as is necessary to enable the Customs Service to properly assess duties on the

merchandise. . . ." 19 U.S.C. § 1484(a)(1)(B)(i). Taking these two provisions together, Customs

argues that if an importer has not provided the necessary documentation at the administrative level

it may not present such documentation before the court.

The fundamental flaw with Customs' argument is that it conflicts with another statutory

provision stating that the court's determination in reviewing a case contesting the denial of a

protest pursuant to 28 U.S.C. § 1581(a) is based on the record the court makes. *See* 28 U.S.C. §

2640(a)(1) (1994). Holding that an importer is estopped from presenting new evidence limits the

court's express statutory authority to develop a record. *See ITT Corp. v. United States*, 24 F.3d

1384, 1389 (Fed. Cir. 1994).[2] Courts are as hesitant to adopt rules that narrow their authority as

they are to adopt those that expand it. *See Swisher Int'l., Inc. v. United States*, 205 F.3d 1358,

1366 (Fed. Cir. 2000) (citing *Eurasia Import Co., Inc. v. United States*, 31 C.C.P.A. 202, 211-12

(1944)). A court should avoid interpretations that unnecessarily place one or more provisions of

the statute in conflict. *See Princess Cruises, Inc. v. United* States, 201 F.3d 1352, 1362 (Fed. Cir.

---

[2] In *ITT* the court held that at a trial de novo additional evidence that was not previously provided administratively to Customs, could be introduced to substantiate a mistake of fact claim. Therefore, the court could consider the additional evidence and order reliquidation of the imported merchandise.

> A principal purpose of trial de novo under § 2640(a), after all, is to enable importers to prove the truth of the assertions they have made to Customs. While a prudent importer would submit all its supporting documentary evidence along with its timely notice alleging mistake of fact before Customs' consideration in order to facilitate a prompt and favorable decision by Customs, neither statute nor case law precludes court-ordered reliquidation under § 1520(c)(1) after a trial de novo.

*ITT Corp.,* 24 F.3d at 1388.

2000) ("It is a long-held tenet of statutory interpretation that one section of a law should not be interpreted so as to render another section meaningless.").

Customs argues that its position renders all of the statutory provisions in harmony because any other reading would render 19 U.S.C. § 1484 a nullity. However, there is a better way of viewing 19 U.S.C. § 1484 that saves the conflict between it and 28 U.S.C. §§ 2638 and 2643(b) (1994), while preserving the court's authority to develop a record.[3] Customs has authority to initiate civil penalty proceedings against an importer for fraud, gross negligence and negligence. *See* 19 U.S.C. § 1592 (1994). The legislative history accompanying the reasonable care legislation states that an importer who fails to use reasonable care may be liable for civil penalties. *See* H.R. Rep. No. 103-361(I), at 121 (1993), *reprinted in* 1993 U.S.C.C.A.N. 2552, 2671. Here, if Customs believes that Plaintiff failed to exercise reasonable care, its remedy is through civil penalty proceedings. Thus, it is through reference to the reasonable care requirements as they relate to the civil penalty provisions of 19 U.S.C. § 1592 that all of the statutory provisions can be read in harmony, and no violence done to the court's authority.

Finally, the court does not find Custom's argument regarding the presumption of correctness persuasive. The Federal Circuit did not hold in *Bubble Room* that it was error to permit the taxpayer to introduce evidence before the Court of Federal Claims that it did not present to the IRS. Rather, in setting forth the applicable standard of review, the court noted that the taxpayer had the burden of proving both the error of the Internal Revenue Commissioner's determination and of proving her entitlement to the refund amount claimed. *See Bubble Room,*

---

[3] 28 U.S.C. § 2638 provides that the court may consider any new ground raised before it if the argument applies to the same merchandise and is related to the same administrative decision. 28 U.S.C. § 2643(b) sets out the court's options if it cannot arrive at the correct decision.

*Inc.*, 159 F.3d at 561. Nowhere in the court's decision does it mention that the presumption of correctness prohibited the taxpayer from presenting evidence not presented to the Commissioner. In fact, the court remanded the case for the Court of Federal Claims to determine whether the taxpayer had provided enough evidence to overcome the presumption of correctness and to show her entitlement to the claimed refund. *See Bubble Room, Inc.*, 159 F.3d at 568. Therefore, the case does not support the legal principle that the Plaintiff is estopped from presenting evidence it did not present to Customs.[4] Accordingly, the court denies Custom's motion for Partial Summary Judgment and will review DuPont's evidence as required by 19 U.S.C. § 2640(a)(1) without regard to whether it was presented to Customs in the administrative proceeding below.

**B.** **Further findings of fact are required to determine if the diuron is entitled to duty-free entry.**

Merchandise which is the product of a beneficiary developing country ("BDC") is eligible for duty-free entry into the United States if it is directly imported from the BDC and the sum of the cost or value of the merchandise produced in the BDC when added to the direct costs of processing operations performed in the BDC is not less than 35 percent of the appraised value of the merchandise. *See* 19 U.S.C. § 2463(a)(2)(A) (1994). Both parties agree that the only criterion at issue is whether 35 percent of the appraised value of the diuron is of Brazilian origin. Customs contends that DuPont did not present enough credible evidence to prove that the direct costs of processing operations were "at least 35 percent of the appraised value." *Def.'s Mem. in Opp'n to Pl.'s Mot. for Summ. J.*, at 23-29 (*"Def.'s Opp'n"*). Customs alleges that DuPont's inclusion of

---

[4] Customs concedes that the Federal Circuit does not accord its legal determinations a presumption of correctness. *See Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J.,* at 10 ("Def's Reply"). It notes that it is raising the argument to preserve it for appeal. *See id.*

the DCPI costs were erroneous because DuPont failed to show that the DCPI used to produce the

imported diuron was a product of Brazil.  *Id.* at 28-29.  Therefore, Customs rejected DuPont's

claim that the DCPI costs should be included in the BDC local content costs. With the exclusion

of DCPI costs, Customs found that "direct costs of processing operations" performed in Brazil

were not  "35 percent of the appraised value," denied duty-free entry, and liquidated the diuron at

12.8 percent *ad valorem.*

      Central to resolving this issue is the ability to trace the origin of the DCPI used in the

production of the diuron at issue in this case.  In a Headquarters Ruling in 1993, Customs

reviewed the duty-free eligibility of imported Brazilian diuron.  *See* Headquarters Ruling 557015

(June 28,1993) ("*HR*").   HR 557015 held that only the DCPI of Brazilian origin could be applied

to the production costs for GSP eligibility requirements.  *Id.* at 7.

> The value of the Brazilian-origin DCPI may be included toward the 35% value-content requirement, if Customs can identify the exported shipments by lot and batch productions and the amount of domestic and foreign DCPI can be identified for each such batch or lot of production.

*Id*. at 11.

DuPont admits both local and imported DCPI were used generally in the production of diuron.

*Pl.'s Statement*, at ¶ 11.  However, DuPont contends the DCPI used in the production of the

imported diuron in this case was of Brazilian origin.  *Pl.'s Statement,* at ¶ 11.  Therefore, the cost

of the DCPI should have been included in the  "direct costs of processing operations" and counted

toward the 35 percent statutory requirement.

      The parties disagree on the credibility of do Brasil's records regarding the origin of the

DCPI used in producing the imported diuron.  Customs argues that do Brasil has failed to keep

proper accounting records regarding the source, use, and costs of DCPI.  DuPont has "freely

acknowledged that its regular DCPI inventory records for the years 1991 to 1993 did not, by

themselves, accurately reflect local DCPI costs." *Reply Mem. in Supp. of Pl.'s Mot. for Summ. J.*, at 22 ("*Pl.'s Reply*"). Likewise, DuPont "has acknowledged to Customs that the local content records of DuPont do Brasil for the years prior to 1994 were not maintained for the ready extraction of GSP information . . . ." *Id*. at 21-22. However, DuPont argues "that new record-keeping was instituted in 1993" and after 1993 its accounting system accurately reflected local DCPI inventory and product costs. *Id*. at 22. Although the past record-keeping problems do not prove the 1995 DCPI records are inaccurate, questions still remain regarding do Brasil's ability to properly track DCPI costs under its "new" record-keeping system.

DuPont has submitted documentary evidence as part of its motion to support its claim for GSP. They include employee affidavits, letters, invoices, and a sworn statement from a supplier's employee attesting to the Brazilian origin of the DCPI. However, this evidence does not conclusively support do Brasil's ability to track the Brazilian DCPI through to its export of the diuron at issue. Specifically, do Brasil's cost sheets need further explanation and investigation. The cost sheets are faded and difficult to interpret. Additionally, many terms are in a foreign language and some of the terms have many sub-components that factor into the final cost figures. An example of this is the term "DCPI-Prochrom-M. Externo D." that appears on do Brasil's cost sheets. Customs understands this term to mean "the cost of duty for DCPI imported by Prochrom [DuPont's Supplier]." *Def.'s Opp'n,* at 25. Therefore, Customs contends, these records reflect that the DCPI was not of Brazilian origin and the costs associated with the imported DCPI are not local Brazilian DCPI costs. DuPont claims "both Brazilian domestic and imported raw material could cause costs to be accumulated in this account, for such expenses as local freight and storage. Thus, the name of category ("DCPI-Prochrom-M. Externo D.") does not reveal whether or not the DCPI is imported" and contends this illustrates Customs' erroneous interpretation of the cost

sheets. *Pl.'s Reply*, at 23. However, without the benefit of direct testimony and cross-examination, the court would be accepting DuPont's explanation of these records in direct conflict with the court's duty to critically examine the moving party's evidence. "In considering whether material facts are in dispute, the evidence must be considered in a light most favorable to the non-moving party, drawing all reasonable inferences in its favor, as well as all doubts over factual issues." *Int'l Trading Co. v. United States*, 24 CIT__,__, 110 F. Supp 2d 977, 981 (2000) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Anderson*, 477 U.S. at 255; *Mingus Construction, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987). Therefore, the court determines that further fact findings are necessary to establish the material fact of the origin and cost of the DCPI used in the production of the imported diuron. At trial, DuPont must show that it can accurately track the origin and specifically account for the costs associated with the Brazilian DCPI. Customs will be given the opportunity to test the credibility of these showings through cross-examination and its own evidentiary presentations.


**C.     Further findings of  fact are required to determine the proper diuron valuation.**

19 U.S.C. § 1401a  provides the statutory framework for the valuation of imported goods. The statute creates a hierarchy of valuation methods. When appraising merchandise, Customs must start with the primary method, transaction value, which represents "the price actually paid or payable for the merchandise when sold for exportation to the United States" 19 U.S.C. § 1401a(b)(1). If transaction value cannot be determined or used, the statute sets forth the following preference order for obtaining merchandise valuation: (1) transaction value of identical merchandise, (2) transaction value of similar merchandise, (3) deductive value, (4) computed

value, (5) derived value. *See* 19 U.S.C. §§ 1401a(a)(1)(A-F).

DuPont argues the **[     ]** per kilogram price it paid do Brasil should be used as the transaction value. However, do Brasil is a wholly owned subsidiary of DuPont and, thus, the corporations are "related parties." *See* 19 U.S.C. § 1401a(g)(1)(F). Even though transaction value is the preferred statutory valuation, when the parties are related there must be a showing that "the circumstances of the sale of the imported merchandise indicates that the relationship between such buyer and seller did not influence the price actually paid or payable. . . ." 19 U.S.C. § 1401a(b)(2)(B). To determine that the sale was not influenced by the relationship, the court must determine if the transaction is bona fide and at arm's length. *See* S.Rep. No. 96-249, at 115 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 501.

Section 1401a(b)(2)(B) promulgates two methods for determining if transaction value is applicable in related party transactions. *See VWP of America, Inc. v. United States*, 175 F.3d 1327, 1335 (Fed. Cir. 1999). The first method requires the court to examine the circumstances of the sale to determine if the relationship influenced the price. *See Id.*; 19 U.S.C. § 1401a(b)(2)(B). "The second method involves comparing the transaction value between the related buyer and seller to determine whether it 'closely approximates' either the transaction value for identical or similar merchandise in sales to unrelated buyers in the United States or the deductive or computed value of identical or similar merchandise." *VWP,* 175 F. Supp. at 1335 (citing 19 U.S.C. § 1401a(b)(2)(B)(i-ii)). For the court to properly apply the standards of either method, it must examine the **[     ]** sale price of the diuron.

The regulations set out several ways Customs determines if the relationship of the parties influenced the price. 19 C.F.R. § 152.103(l) provides:

Customs will examine relevant aspects of the transaction, including the way in which the

> buyer and seller organize their commercial relations and the way in which the price in question was arrived at in order to determine whether the relationship influenced the price. . . .

> If it is shown that the price is adequate to ensure recovery of all costs plus a profit which is equivalent to the firm's overall profit realized over a representative period of time (e.g. on a annual basis ), in sales of merchandise of the same class or kind, this would demonstrate that the price has not been influenced.

19 C.F.R. § 152.103(l)(1)(i), (iii) (1992).

To support its contention that transaction value is the proper basis even though the parties are related, Dupont claims the price was negotiated at arm's length and do Brasil had negotiating power with respect to the transfer price. *Mem. in Supp. of Pl.'s Mot. for Summ. J.*, at 14. DuPont also points out it was do Brasil's counter-offer that eventually became the price agreed upon by the parties. *Id.* at 15. Dupont further argues it set up a transfer price methodology "to satisfy the Internal Revenue Code's requirements, as well as the requirements of other relevant foreign income tax laws. . . ." *Id*. at 15-16. Although these facts are offered as evidence of an arm's length agreement, a closer look at the negotiated price of the diuron at issue creates material factual issues regarding the validity of the price.

The original transfer price offered by DuPont was **[    ]**. *Id*. at 14. Then because of overhead cost concerns in the United States, Dupont suggested the transfer price be set at **[    ]**. *Id.* Do Brasil's response to DuPont was a counter-offer of **[    ]**. DuPont agreed to the **[    ]** price in January of 1994. *Id.* DuPont contends the negotiations illustrate do Brazil's ability to freely negotiate the price of the diuron. However, Customs contends that DuPont did influence the price. Customs offers the deposition of Bart D. Ruby, who is employed by DuPont as a Customs Import/Export Manager, as evidence that DuPont controlled the negotiations and influenced the sale price. Customs argues that if DuPont's expenses rose, they could renegotiate the price.

*Def.'s Opp'n.*, at 17 (citing *Ruby Dep*., at 62-65). Conversely, if do Brazil's expenses increased they *could not* renegotiate the price. *Id.* Thus, DuPont could hold do Brasil to the price or renegotiate, but do Brasil could not renegotiate the price even if its expenses drastically increased. Therefore, Customs contends that the negotiated terms of the sale were extremely advantageous for Dupont and, therefore, not characteristic of a sale between unrelated parties. For the court to determine if the sale was an arm's length agreement, further findings of fact are required to ascertain if DuPont's relationship with do Brazil influenced the sale price.

To satisfy the profit requirement of 19 C.F.R. § 152.103(l)(1)(iii), DuPont claims, at the **[ ]** sale price, do Brazil made a gross margin of **[    ]**. *See Pl.'s Reply*, at 6. Customs argues that after costs are factored in, the **[  ]** selling price did not allow do Brasil to recover its product cost. *See Def.'s Opp'n,* at 16. Specifically, Customs contends that the diuron product costs did not include all manufacturing costs and that general expenses and profit were not added to do Brasil's diuron product costs. *Id.* Therefore, Customs argues, do Brazil sold the diuron at a loss. Without first determining do Brasil's diuron product cost, the court cannot decide whether do Brasil sold the diuron at a price above its cost and at a level to recover adequate profit.[5]

As 19 U.S.C. § 1401a mandates, the primary method of merchandise valuation is transaction value. Therefore, until the court can reach a determination regarding the applicability

---

[5] DuPont has not offered evidence to prove the transaction value under the second method, which compares the value at issue to a "test value." *See* 19 C.F.R. § 152.103(l)(2). In the event it becomes an issue at trial, the court will also need to determine Brazil's diuron product costs. The second method presents two ways to test the validity of the transfer price by comparing it to certain reliable appraisements. The first compares the sale between the related parties and determines if it "closely approximates" the transaction value of identical or similar merchandise in sales to unrelated buyers in the United States. 19 U.S.C. § 1401a(b)(2)(B)(i). The second requires the importer to demonstrate that the transaction value closely approximates deductive value or computed value for identical or similar merchandise. 19 U.S.C. § 1401a(b)(2)(B)(ii). The diuron product costs will be important in the analysis of either.

of transaction value, it cannot consider secondary valuation methods.

> Section 1401a(a)(1) sets forth one primary method of valuation and five secondary
> methods. The primary method of valuation is the "transaction value" of the merchandise
> provided for under 19 U.S.C. § 1401a(b)(1). . . . If transaction value, as defined in §
> 1401a(b)(1), cannot be determined or cannot be used, then Customs must appraise the
> imported merchandise by looking to the secondary valuation methods in the order listed in
> § 1401a(a)(1) until an appraisal is obtained.

*VWP,* 175 F.3d at 1331 (citations omitted).

DuPont argues that if transaction value is not applicable, then deductive value should be the

method used to appraise the diuron. Customs, having rejected the use of transaction value,

contends computed value is the proper method of appraisement. Before examining the merits of

the deductive value and computed value claims, the court will first resolve the factual issues

involved in the transaction value appraisal and determine if transaction value is the applicable

appraisal method for the imported diuron.[6]

The court finds that genuine issues of material fact exist regarding the valuation and duty-

free entry of the imported diuron. The record presented here with regard to both the issue of

valuation and the issue of GSP eligibility is inadequate to be adjudicated by summary means.

Therefore, the court denies Plaintiff's Motion for Summary Judgment.

---

[6] 28 U.S.C. § 2639(a)(1) provides; "the decision of the Secretary of the Treasury. . .is presumed to be correct. The burden of proving otherwise shall rest upon the party challenging such decision." The presumption of correctness can be rebutted by a preponderance of the evidence. *See St. Paul Fire & Marine Ins. Co. v. United States*, 6 F.3d 763, 768-770 (Fed. Cir. 1993). Therefore, if DuPont proves its claim that transaction value is the proper appraisal method, it would meet its burden and overcome the presumption of correctness that attaches to Customs' factual determination that computed value is the correct appraisal method.

## CONCLUSION

For the foregoing reasons it is hereby,

ORDERED that Plaintiff's Motion for Summary Judgment is denied; and it is further

ORDERED that Defendant's Cross-Motion for Partial Summary Judgment is denied; and it is further

ORDERED that trial should proceed on all issues raised in Plaintiff's complaint; and it is further

ORDERED that the parties shall consult and, to the extent they are able to agree, submit a proposed order governing trial preparation, in the manner provided by the court, within thirty days from the date of this decision. In the event a trial is not desired, the parties are to submit within thirty days a joint status report to the court describing an alternate resolution to the case.

Dated: _____

    New York, NY

_____

Judith M. Barzilay

Judge